**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Delvis Acosta Fleites,

Petitioner,

v.

John E. Cantu, *et al.*,

Respondents.

No. CV-26-05583-PHX-JJT

**ORDER**

Before the Court is Petitioner's Motion to Enforce Judgment and Request for Immediate Release (Doc. 10). Respondents filed a Response in opposition (Doc. 12) and Petitioner filed a Reply (Doc. 13). Petitioner filed his original Petition for Writ of Habeas Corpus seeking a bond hearing pursuant to 8 U.S.C. §1226(a). (Doc. 1 at 2-3.) After the Ninth Circuit entered its Opinion in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir, July 26, 2026), Respondents advised they did not oppose the request for a bond hearing. (Doc. 7.) On August 19, 2026, the Court granted the Petition in part and ordered Respondents to "provide Petitioner a bond redetermination hearing with seven days or release Petitioner from custody under the same conditions that existed before Petitioner's detention." (Doc. 8.)

On August 20, the day after the Court granted relief, the Immigration Judge ("IJ") convened a bond redetermination hearing. (Doc. 10-1 at 11-12.) The Court has reviewed the transcript of that hearing (Doc. 10-1 at 5-10) and the IJ's resulting Order denying release (Doc. 10-1 at 11-12), as well as all of the supporting materials, to include both

parties' submissions to the IJ in preparation for the hearing. After hearing both sides' presentations of argument at the hearing, the IJ found that Petitioner presented both a flight risk and a danger:

> We are denying bond, although I see that the Respondent has several things that work in his favor. *Guerra* does give the court wide latitude and in its discretion the court is taking into consideration the illegal entry of the Respondent. It shows a propensity to not follow the law of the United States, even though there are other factors in there.
>
> Respondent states that he is driving and that his profession is a driver, although he cannot speak English. That presents a hazard on the roads. The court considers that a danger to all. There is question whether respondent can read English. The respondent stated under the record that he does not speak English. The court takes that very seriously. So, the court will be denying bond in this case.

(Doc. 10-1at 9.)

Petitioner thereafter filed the instant Motion. In it, he argues the hearing did not satisfy his constitutional due process rights. Respondents here contend that Petitioner simply doesn't like the outcome and that he is therefore inviting the court to re-weigh the evidence, which of course this Court cannot do. Respondents also argue the Court should never reach the merits because Petitioner has failed to exhaust his administrative remedies by appealing the IJ's ruling to the BIA.[1] (Doc. 12 at 2-4.)

A district court sitting in habeas review may not re-weigh an IJ's evidentiary determinations in making a detention decision. 8 U.S.C. §1226(e) (providing that "[n]o court may set aside any action or decision by the attorney general under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond[.]"). But the statute "does not limit habeas jurisdiction over constitutional claims or questions of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Nor does it bar a

[1] The parties' briefing and supporting materials make clear only that Petitioner reserved his right to appeal the IJ's detention decision, but does not inform this Court whether such an appeal was pursued.

federal district court from concluding that "the evidence before the IJ failed, as a matter of law, to prove flight risk or danger." *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008). And specifically for purposes of the analysis before the Court here, "the determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024) (internal cites omitted).

Each time the Court is asked to review an IJ's detention determination, it is mindful of exercising restraint to separate requests to re-weigh the evidence and substitute its own judgment or discretion in applying the *Guerra* factors, on the one hand, from evaluating whether legal error occurred on the other hand. But the circumstances of this matter do not present an invitation to re-weigh evidence—there simply was none. While the IJ stated his reasons for finding both flight risk and danger on the record at the hearing, those reasons and the information and assumptions he pointed to support them all failed as a matter of law to prove either flight risk or danger.

As to danger – a finding the DHS counsel neither sought nor encouraged nor presented any evidence to support—the IJ generated his own test for English language proficiency of Petitioner,[2] and then found Petitioner was a danger solely on the basis that Petitioner drove a truck for a living, but did not speak English. The record was clear that the kind of truck petitioner drove for a living was a GMC 3500 – a pick up truck – not a commercial vehicle. The record is also undisputed that Petitioner held a valid Florida driver's license which would allow him to drive such a vehicle for any purpose. The state of Florida Motor Vehicles Division has the authority to decide who is and is not meeting its qualifications for issuance of a license that would permit them to drive non-commercial vehicles, and it evidently concluded Petitioner met that requirement, regardless of his English language proficiency. That determination is given full faith and credit by all states in the union. Absent any record of speeding tickets, moving violations or other unsafe

[2] The IJ asked Petitioner a question—"How long have you been driving? How long have you—Sir, how long have you been driving?"—in English and instructed the interpreter not to translate it. Petitioner responded, "No English? No English?" (Doc. 10-1 at 9.)

driving, the IJ here manufactured his own test for danger. Moreover, he mentioned no other fact or information as support for his finding of dangerousness. The IJ thus failed as a matter of law in making such a finding unsupported by any evidence he articulated.

Regarding his finding of flight risk, the IJ relied completely on two considerations: first, his statement that Petitioner‘s unlawful entry into the United States in 2022 served as proof that he could not be trusted to follow the law; and second, his conclusion that Petitioner's two sponsors – his brother, who pledged to provide residential support, and his friend who pledged sponsorship and support as well, were inadequate to guarantee against the risk of Petitioner's flight because between the two of them, they only reported income of $100,000 per year in the aggregate.

The first of these findings the Court does not re-weigh in any fashion. It simply concludes the statement is no basis at all on which to find flight risk. If coming to the United States without lawful permission—without any other factor—were enough to justify keeping an alien detained upon the conclusion they cannot follow the law, the vast majority of aliens subject to 8 U.S.C. §1226(a) could never gain release. The IJ's test here would render Section 1226(a) a nullity in large measure.

This leaves the IJ's mention (in his written Order only) of Petitioner's two sponsors having "lower income," which the IJ stated "would make insuring that [Petitioner] appears at future hearings speculative." (Doc. 10-1 at 11.) That is the entire basis for the IJ's finding, and the Court concludes it too fails as a matter of law to demonstrate flight risk. The hearing Petitioner received was insufficient as a matter of law.

Respondents urge the Court not to reach the merits of this Motion, arguing it should uphold the requirement for Petitioner to exhaust all administrative remedies first. Habeas claims are generally accompanied by a prudential exhaustion requirement. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). But a court may waive the prudential exhaustion requirement if any one of the following factors are met: 1) the administrative remedies are inadequate or not efficacious; 2) pursuit of administrative remedies would be a futile gesture; 3) irreparable injury will result; or 4) the administrative proceedings would

be void. *Laing v. Ashcroft*, 370 F.3d 944, 1000 (9th Cir. 2004). The Court finds that at least factor 3 is met in that irreparable injury will result from further detention while any review by BIA of the IJ's determination takes place. First, there has taken place a deprivation of Petitioner's liberty for over four months in total, and nearly three months since the Court ordered he receive a lawful bond redetermination hearing. And second, Petitioner's detention harms his spouse and minor child while he is unable to support them despite having a work permit. *See Sessions*, 872 F.3d at 995 (recognizing that "economic burdens imposed on detainees and their families as a result of detention" as well as "the collateral harms to children of detainees whose parents are detained" are relevant considerations in the irreparable harm analysis.) The Court thus will waive the prudential exhaustion requirement in this matter.

Having addressed the merits of the Motion as set forth above and concluded the relief sought is warranted,

**IT IS ORDERED** granting Petitioner's Motion to Enforce Judgment and Request for Immediate Release (Doc. 10). Respondents shall release Petitioner immediately under the same conditions that existed prior to his detention.

**IT IS FURTHER ORDERED** Respondents shall file a Notice of Compliance with the Court's Order **within three business days**.

Dated this 13th day of October, 2026.

Honorable John J. Tuchi
United States District Judge